IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CITY OF ALBUQUERQUE,

        Plaintiff,

v.

SEAN DUFFY, IN HIS OFFICIAL
CAPACITY AS SECRETARY OF
TRANSPORTATION; U.S. DEPARTMENT
OF TRANSPORTATION; FEDERAL HIGHWAY
ADMINISTRATION; AND SEAN MCMASTER,
IN HIS OFFICIAL CAPACITY AS
ADMINISTRATOR OF THE FEDERAL HIGHWAY
ADMINISTRATION,

        Defendants.

Case No.
1:25-CV-01072–KG-KRS

## DEFENDANTS' MOTION TO DISMISS

In 2022, the U.S. Department of Transportation ("DOT") selected the City of Albuquerque ("Albuquerque") to receive funding for a "rail trail" project. DOT made clear that this selection was merely an initial step, and that funding would not be legally obligated until the parties executed a grant agreement. Although DOT and Albuquerque discussed the matter over the next three years, they never executed a grant agreement. In September 2025, DOT decided not to finalize the process, and it withdrew the selection.

Albuquerque now challenges the withdrawal, attempting to make a federal case out of this straightforward exercise of agency discretion. Albuquerque's complaint fails to state a claim and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for the following related reasons.

*First*, DOT's withdrawal was "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), and is therefore not subject to judicial review under the Administrative Procedure

1

Act ("APA"). Albuquerque does not complain that DOT *terminated* a grant agreement, but merely that DOT decided not to *enter* into a grant agreement in the first place. The relevant statute, however, gives DOT complete discretion not to enter into a grant agreement with an applicant, and Albuquerque may not challenge DOT's exercise of that unfettered discretion.

*Second*, DOT's withdrawal is not a reviewable "final agency action." 5 U.S.C. § 704. An agency action is only reviewable under the APA if, among other things, it is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997). DOT's decision not to execute a grant agreement with Albuquerque did not determine any rights or obligations, or lead to any legal consequences, because it left Albuquerque in the same position: lacking any legal entitlement to grant funds.

Because Albuquerque never had any right to the grant funds, it cannot state a claim upon which relief may be granted. In the alternative, if the Court were to somehow conclude that Albuquerque *did* have a right to the funds, the case would be subject to dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) because the Tucker Act gives the Court of Federal Claims exclusive jurisdiction over claims against the Government based on express or implied contracts. 28 U.S.C. § 1291(a)(1).

The undersigned counsel for Defendants contacted Plaintiff's counsel regarding this motion and they are opposed.

## BACKGROUND

Congress authorized DOT to award grants for local and regional transportation infrastructure projects through a program commonly known as the Better Utilizing Investments to Leverage Development ("BUILD") program. 49 U.S.C. § 6702. The statute sets eligibility

standards and identifies selection criteria, but it does not mandate that DOT award grants to any particular recipient. *See id.*

On January 27, 2022, DOT issued a Notice of Funding Opportunity ("NOFO") soliciting applications for BUILD program grants.[1] Compl. Doc. 1-2. DOT stated that following its evaluation of applications, it would "announce awarded projects by posting a list of selected projects." *Id.* at 62. It cautioned, however, that "[n]otice of selection is not authorization to begin performance or to incur costs for the proposed project," and that DOT would contact each selected recipient "to initiate negotiation of the grant agreement for authorization." *Id.* DOT made clear, moreover, that recipients "will not receive lump-sum cash disbursements at the time of award announcement," and that DOT would "reimburse recipients only after a grant agreement has been executed, allowable expenses are incurred, and valid requests for reimbursement are submitted." *Id.* And DOT stated that "any costs that a recipient incurs before DOT executes a grant agreement for that recipient's project are ineligible for reimbursement." *Id.* The NOFO imposed no limitations on DOT's ability to withdraw a selection prior to execution of a grant agreement.

On August 11, 2022, DOT notified Albuquerque that the Albuquerque Rail Trail project (the "Rail Trail Project") had been selected for a grant and that DOT would be in contact "regarding next steps to complete the relevant requirements before executing a grant agreement." Compl. Doc. 1-4. DOT told Albuquerque in clear terms that "[t]his letter DOES NOT authorize the applicant to incur fees," that only "execution of the grant agreement will obligate" funding,

---

[1] At the time, the program was referred to as the Rebuilding American Infrastructure with Sustainability and Equity ("RAISE") program. Compl. Doc. 1-2 at 1.

and that "any costs incurred prior to that obligation of funds . . . are ineligible for reimbursement." *Id.* (emphasis in original).

Albuquerque alleges that for the next three years, it "negotiated the grant agreement pending the Rail Trail project's design being federally compliant and the project itself being 'shovel ready.'" Compl. ¶ 26. Albuquerque acknowledges that DOT "advised the City that it would not sign the grant agreement and obligate the funding until a project was ready to begin construction under [DOT's] standards." *Id.* At no point after the August 2022 selection did DOT and Albuquerque execute a formal agreement for the project.

On September 9, 2025, DOT sent a letter to Albuquerque providing notice that DOT was withdrawing its selection of the Rail Trail Project for a grant. Compl. Doc. 1-5. Albuquerque filed this action on October 31, 2025, purporting to challenge DOT's withdrawal.

## ARGUMENT

### I. DOT's Discretionary Decision Not to Enter into a Grant Agreement Is Not Subject to Judicial Review.

DOT's withdrawal of the Rail Trail Project's selection represents merely a determination by the Department that it no longer wished to continue negotiations that might lead to a grant agreement for that project. This decision was a quintessential discretionary agency action that is unreviewable under the APA.

Pursuant to 5 U.S.C. § 701(a)(2), an agency action is not subject to judicial review when it is "committed to agency discretion by law." Review under the APA therefore is unavailable where "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

Courts have long held that an agency's determination of how to allocate funds among competing priorities and recipients—precisely what Plaintiff challenges here—is a classic exercise of discretion committed to an agency by Congress. *See Lincoln v. Vigil*, 508 U.S. 182, 193 (1993). In *Lincoln*, the Court explained that "the very point of a lump-sum appropriation is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Id* at 192. Agencies' discretionary actions are generally unreviewable when administering programs that, like BUILD, leave to the agency "the decision about how the moneys … could best be distributed consistent with" the statute. *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 751 (D.C. Cir. 2002). Such decisions clearly "require[] a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise." *See Lincoln*, 508 U.S. at 193; *see also Cmty. Action of Laramie County v. Bowen*, 866 F.2d 347, 354 (10th Cir. 1989) ("Funding determinations are notoriously unsuitable for judicial review, for they involve the inherently subjective weighing of the large number of varied priorities which combine to dictate the wisest dissemination of an agency's limited budget.") (quotation omitted.).

These principles apply squarely to DOT's withdrawal of the Rail Trail Project's selection. While Congress imposed eligibility requirements and identified selection criteria for the BUILD program, it did not in any way limit DOT's discretion to choose *not* to issue a grant to a particular recipient, regardless of whether that recipient is eligible. Nor did Congress mandate that DOT make awards to particular recipients. *See Lincoln*, 508 U.S. at 193-94 (noting that "the appropriations Acts for the relevant period do not so much as mention" the program plaintiffs wished the agency to continue). The statute gives DOT broad discretion to decide how to

obligate funds consistent with law and agency priorities. *See* 49 U.S.C. § 6702(a)(3)(H). The statute thus provides no standard "against which to judge the agency's exercise of discretion" in deciding not to pursue an agreement with Albuquerque. *Heckler*, 470 U.S. at 830. Contrary to Albuquerque's assertions, *see* Compl. ¶¶ 64-71, the reasoning DOT gave is not subject to review; indeed, the statute does not require DOT to provide *any* reasoning when deciding not to enter into a discretionary grant agreement.

This court recently has applied these very principles under similar circumstances in *Bd. of Educ. for Silver Consol. Schs. v. McMahon*, 791 F. Supp. 3d 1272, 1290 (D.N.M. 2025). In that case, a recipient of mental health grant funding challenged the U.S. Department of Education's decision not to renew that funding. United States District Judge William Johnson denied the plaintiff's preliminary injunction motion, holding—among other things—that the decision on how to allocate grant funding is "a quintessential decision committed to agency discretion by law." *Id*. at 1291. The Court explained that the U.S. Department of Education program at issue was a lump-sum appropriation that "leaves it to the recipient agency (as a matter of law, at least) to distribute the funds among some or all of the permissible objects it sees fit." *Id.* at 1290. (quoting *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Donovan*, 746 F.2d 855, 861 (D.C. Cir. 1984)). The same is true here.

Though courts have suggested that judicial review may be available for "colorable constitutional claims" stemming from discretionary decisions, *Lincoln*, 508 U.S. at 195, no such claims are present here. Albuquerque claims that DOT violated the Separation of Powers, the Take Care Clause, and the Presentment Clause because it withdrew an award selection that was purportedly consistent with the statute. But as noted above, even assuming that DOT *could* have

6

validly awarded funding to Albuquerque, nothing in the statute *required* it to do so. Albuquerque's artful pleading does not permit it to escape the fact that it is challenging an action that DOT had full discretion to undertake.

II.  **DOT's Decision Not to Enter Into a Grant Agreement Was Not a Reviewable Final Agency Action.**

Albuquerque's claims are also unreviewable for another reason: they do not challenge the type of "final agency action" that is subject to judicial review. 5 U.S.C. § 704. A final agency action must, among other things, be "one by which rights or obligations have been determined or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up). DOT's withdrawal of funding did not nothing to affect Albuquerque's rights or obligations, and no legal consequences flowed from it because Albuquerque had no enforceable rights or obligations in the first place.

The 2022 selection letter was unambiguous that Albuquerque had no legal right to funds. DOT explicitly stated that the "letter DOES NOT authorize the applicant to incur costs to carry out the project" and "unless authorized by USDOT in writing, any costs incurred prior to that obligation of funds for a project are ineligible for reimbursement." Compl. Doc. 1-4. It also explained that more steps were required "before executing a grant agreement," which made clear that Albuquerque had not yet completed the process required to access the awarded funds. *Id*. Thus, Albuquerque had no legal right to DOT funding when the Rail Trail Project was selected, and it never obtained a legal right to funding because a grant agreement was never executed. The withdrawal, therefore, did not change Albuquerque's legal position in any way. *See Aerosource v. Slater*, 142 F.3d 572 (3d Cir. 1998) (agency's denial of party's request to rescind document was

not a final agency action because it "did nothing more than leave [the party] in the position it was in" from the outset).

### III. Even if the 2022 Selection Letter Was a Binding Agreement, Jurisdiction Would Lie Only With the Court of Federal Claims.

The arguments discussed in Sections I and II both rely upon the fact that the 2022 selection letter did not give Albuquerque any right to grant funding. Because the 2022 letter conferred no rights, its withdrawal: (1) was not a grant *termination*, but was instead a wholly discretionary decision *not to award* a grant in the first place; and (2) left Albuquerque in the same legal position it was in before the withdrawal. If the Court agrees with either or both of these arguments, its inquiry can end there. Alternatively, if this Court were to somehow find that the 2022 selection letter *did* give Albuquerque a right to grant funding, this case would constitute a contract dispute that can be heard only in the Court of Federal Claims.

The Tucker Act vests the Court of Federal Claims with exclusive jurisdiction over claims against the United States that stem from "any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). Conversely, the APA's waiver of sovereign immunity does not apply to claims "seeking relief other than money damages" or if "any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702.

Twice in the past year, the United States Supreme Court has made clear that these principles deprive a District Court of jurisdiction over a challenge to a federal agency's grant terminations. In April 2025, the Court stayed an injunction that prohibited the Government from, among other things, "terminating various education-related grants," noting that "the APA's limited waiver of immunity does not extend to orders to enforce a contractual obligation to pay money along the lines of what the District Court ordered." *Dep't of Educ. v. California*, 604 U.S.

650 (2025) (per curiam). In August 2025, the Court stayed judgments "vacating the Government's termination of various research-related grants," holding that the District Court lacked jurisdiction "to adjudicate claims based on the research-related grants or to order relief designed to enforce any obligation to pay money pursuant to those grants." *Nat'l Inst. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2659 (2025) (per curiam); *see also id.* at 2665 (Kavanaugh, J., concurring in part and dissenting in part) ("The core of plaintiffs' suit alleges that the Government unlawfully terminated their grants. That is a breach of contract claim. And under the Tucker Act, such claims must be brought in the Court of Federal Claims, not federal district court.").

Again, DOT's position is that the plain language of the 2022 selection letter shows that Albuquerque and DOT never entered into any sort of binding agreement. *See* Compl. Doc. 1-4. Albuquerque, however, appears to disagree. *See, e.g.*, Compl. ¶¶ 54, 96, 103 (alleging that DOT withdrew a "grant already awarded"); *id.* ¶ 70(d) (referencing the purported "serious reliance interests engendered by the prior approval of the City's FY 2022 Raise Grant award"). And if the 2022 selection letter somehow constitutes a binding agreement, Albuquerque's claims challenge an effective termination of that agreement, and such claims belong in the Court of Federal Claims for the reasons discussed in *Dep't of Educ. and Nat'l Inst. of Health*.

To the extent Albuquerque's claims are based on a purportedly binding agreement, they are not APA claims because they are rooted in a contract dispute with the United States. "The classification of a particular action as one which is or is not 'at its essence' a contract action depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1083

(10th Cir. 2006) (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)). Both prongs point toward a lack of district court jurisdiction here.

### A. *A letter initiating contract negotiations undergirds the asserted rights.*

Albuquerque claims that it is entitled to funds because of the August 2022 award letter. Compl. ¶ 13. Without the award letter, "it is likely that no cause of action would exist at all." *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 377 (2d Cir. 1999) (citation omitted). That Albuquerque's claims could not "exist[] prior to and apart from rights created under the [award letter]" weighs sharply against district court jurisdiction. *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985); *see also Consol. Edison Co. of N.Y. v. U.S. Dep't of Energy*, 247 F.3d 1378, 1385–86 (Fed. Cir. 2001).

Because no cause of action would exist without the award letter, Albuquerque's APA claims are necessarily "'based on' the [] grants," *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2658 (2025) (Mem.) (quoting *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025) (per curiam)), and this Court thus lacks jurisdiction.

### B. *Albuquerque seeks money damages.*

Though Albuquerque's complaint is styled as a request for injunctive relief, Albuquerque ultimately seeks monetary damages from the United States, which is outside of this Court's jurisdiction. "To determine whether a claim seeks monetary relief, however, a reviewing court must look beyond the face of the complaint." *Normandy Apartments, Ltd. v. U.S. Dept. of Housing and Urban Development*, 554 F.3d 1296 (10th Cir.2009). "[T]he Court of Federal Claims' exclusive jurisdiction may not be avoided by 'framing a complaint in the district court as one seeking injunctive, declaratory, or mandatory relief when, in reality, the thrust of the suit is

one seeking money from the United States.'" *Burkins v. United States*, 112 F.3d 449 (10th Cir. 1997) (quoting *New Mexico v. Regan*, 745 F.2d 1318, 1322 (10th Cir. 1984)). "Even if a complaint does not explicitly seek monetary relief, the Court of Federal Claims' exclusive jurisdiction is triggered whenever the 'prime objective' or 'essential purpose' of a suit is to recover money in excess of $10,000 from the federal government." *Normandy*, 554 F.3d at 1296 *(*quoting *Burkins*, 112 F.3d at 449). "A plaintiff's prime objective or essential purpose is monetary unless the non-monetary relief sought has significant prospective effect or considerable value apart from the claim for monetary relief." *Id*. (internal quotations omitted). Here, the primary objective of Albuquerque's suit is to obtain Federal monies it believes DOT was obligated to provide by virtue of the 2022 grant selection letter. In other words, Albuquerque seeks to order DOT to specifically perform contractual obligations, a "classic contractual remedy," and one that is generally unavailable against the Federal Government. *Spectrum*, 764 F.2d at 894; *see also Ingersoll-Rand Co. v. United States,* 780 F.2d (D.C. Cir. 1985) at 79–80 (order "reinstating the original award of [a] contract . . . . amount[ed] to a request for specific performance").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendant's Motion to Dismiss.

Dated: January 16, 2026

Respectfully submitted,

Of Counsel:

GREGORY ZERZAN
General Counsel

CHARLES E. ENLOE
Assistant General Counsel
  For Litigation and Enforcement

SAMUEL G. FULLER
Acting Deputy Assistant General Counsel
  For Litigation and Enforcement

United States Department of Transportation

TODD BLANCHE
Deputy Attorney General

RYAN ELLISON
First Assistant United States Attorney

By: /s/ *Matthew L. Yanez 1/16/26*
MATTHEW L. YANEZ
Special Assistant United States Attorney
1200 New Jersey Ave SE
Washington, DC 20590
(771) 216-4991
Matthew.yanez@dot.gov

*/s/ Roberto D. Ortega 1/16/26*
ROBERTO D. ORTEGA
Assistant United States Attorney
201 3rd St., NW, Suite 900
Albuquerque, NM 87102
(505) 224-1519
Roberto.ortega@usdoj.gov

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on January 16, 2026, I filed the foregoing electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

                                                     /s/ *Matthew L. Yanez 1/16/26*
                                              Special Assistant United States Attorney
                                              1200 New Jersey Ave SE
                                              Washington, DC 20590