# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CITY OF ALBUQUERQUE,                                       Case No. 1:25-CV-01072-KG-KRS

        Plaintiff,

    v.

SEAN DUFFY, IN HIS OFFICIAL
CAPACITY AS SECRETARY OF
TRANSPORTATION; U.S. DEPARTMENT
OF TRANSPORTATION; FEDERAL HIGHWAY
ADMINISTRATION; AND SEAN MCMASTER,
IN HIS OFFICIAL CAPACITY AS
ADMINISTRATOR OF THE FEDERAL
HIGHWAY ADMINISTRATION,

        Defendants.


## RESPONSE TO DEFENDANTS' MOTION TO DISMISS

**INTRODUCTION**

Rather than engage with the substance of Plaintiff City of Albuquerque's ("Albuquerque") claims, Defendants Sean Duffy (the "Secretary"), the United States Department of Transportation ("DOT"), the Federal Highway Administration, and Sean McMaster (collectively, "Defendants") ask the Court to find their sudden, unexplained withdrawal and cancellation of a grant—awarded under the Local and Regional Project Assistance Program of the Infrastructure Investment and Jobs Act (the "Program")—immune from review in this Court.

Albuquerque received that award, totaling $11,466,938.00 and representing 80% of the funding Albuquerque had been counting on for the development of critical multimodal infrastructure, because its proposed project satisfied statutorily mandated criteria binding the Secretary's discretion. For years thereafter, Albuquerque expended dozens of man hours to make its project federally compliant and shovel-ready. But just as the grant agreement was ready for finalization, Defendants pulled the rug out from Albuquerque by withdrawing the award—with no explanation other than the project was no longer aligned with the administration's priorities, which ran directly counter to Congress' stated purpose in appropriating Program monies.

For three reasons, this Court should reject Defendants' attempt to shield their actions from review in this Court and proceed to the merits.

First, Defendants are wrong that the conduct Albuquerque challenges here is "committed to agency discretion by law" such that review is unavailable under the Administrative Procedure Act ("APA"). 5 U.S.C. § 701(a)(2). That exception to the presumption in favor of judicial review of APA claims is quite narrow and applies only when the statute offers no concrete limitations to impose on agency discretion. Revealingly, however, Defendants do not at all address the language

of the operative statute itself, 49 U.S.C. § 6702, which appropriates a specific amount of money that must be put to specific purposes and awarded by a specific date pursuant to specific criteria. The statutory language shows that there is indeed "law to apply" here, making this action distinguishable from Defendants' cases—which all involved statutes or regulations that vested unbridled discretion in the administrative actor. And nothing about 5 U.S.C. § 701(a)(2) would bar consideration of Albuquerque's constitutional claims, which Defendants' motion does not squarely challenge.

Second, contrary to Defendants' arguments, Albuquerque's APA claims seek review of a "final agency action." 5 U.S.C. § 704. The withdrawal and cancellation of the award represented Defendants' definitive, non-ambiguous determination—there are no further administrative actions for Defendants to take. That decision carries the significant legal consequence of depriving Albuquerque of funds previously awarded. It is hardly surprising, then, that nearly every court considering similar circumstances has disagreed with Defendants' position that finality is absent here. This Court should join that chorus.

Third, Defendants gloss over the relief that Albuquerque seeks to argue that the Tucker Act dictates this case must be heard in the Court of Federal Claims. Albuquerque does not seek an *award* of grant monies, but only equitable relief. Albuquerque's "source of rights" stems not from any federal contract, but the standards mandated by 49 U.S.C. § 6702(d)(3). The mere fact that a downstream consequence of Albuquerque's action is that it might be awarded the grant monies is not enough to make this a contract case only maintainable in the Court of Federal Claims.

This Court should deny Defendants' motion and hold that the courthouse doors remain open when an agency withdraws a grant in defiance of the very statute that authorized it.

## BACKGROUND[1]

This case arises from Defendants' abrupt, unexplained decision to withdraw and cancel a $11,466,938.00 funding award for Albuquerque's Rail Trail Project ("Rail Trail"). (Doc. 1 at 2.) That funding award was made under the Program, which specifically authorized the Secretary to award grants for "capital investments in surface transportation infrastructure." (*Id.* ¶¶ 10–11.) Congress instructed the Secretary to consider mandatory factors when selecting projects for a grant award, including safety, environmental sustainability, quality of life, economic opportunity, and mobility and community connectivity. (*Id.* ¶ 12.)

Pursuant to Congress's direction, DOT issued a Notice of Funding Opportunity ("NOFO") announcing that it sought to award projects on a competitive basis consistent with the statutory criteria. (*Id.* ¶¶ 14–17.) Albuquerque applied for and was awarded funding for the Rail Trail, a multi-use urban trail project through the heart of Downtown Albuquerque meant to connect Downtown's rail corridor by traveling through and building bridges across the communities disconnected by the railroad built in 1880, while providing designated space for pedestrians and cyclists in multiple portions of the trail. (*Id.* ¶¶ 18–23.)

For years after receiving the award, Albuquerque spent considerable resources (including dozens of man hours) collaborating with the state and federal governmental agencies to negotiate the terms of the agreement while the Rail Trail's design was brought into federal compliance and the project became shovel-ready. (*Id.* ¶¶ 24–27.)

---

[1] The factual allegations of Albuquerque's complaint must be taken as true for the purposes of Defendants' motion. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

When that process was on the precipice of completion, however, Defendants changed their position. In March of 2025, the Secretary issued a memo (the "Duffy Memo") instructing offices to review award selections where funding had been allocated "to advance climate, equity, and other priorities counter to the Administration's Executive Orders," including Executive Order 14154 – *Unleashing American Energy*. (*Id.* ¶¶ 28–31.) The Duffy Memo contemplated a "project-by-project" review for awards where "[s]tatutory language includes equity requirements, climate considerations, or bicycle infrastructure; NOFO mandatory evaluation criteria includes equity and/or climate requirements; [or] [e]ligible activities included bicycle infrastructure, EV and/or EV charging infrastructure," the very criteria applicable to the Program. (*Id.* ¶¶ 31–32.)

On September 9, 2025, DOT issued a letter to Albuquerque (the "DOT Letter") summarily stating that DOT had reviewed the Rail Trail grant "in light of DOT's priorities" and was now withdrawing selection of the grant. (*Id.* ¶ 34 & Ex. D.) Rather than referencing the Program's criteria, the letter stated that DOT's priorities "presently" include: "focusing DOT's multimodal grant programs primarily on projects that promote vehicular travel; and ensuring that taxpayer dollars are used efficiently in ways that maximally benefit the American people and improve their quality of life." (*Id.* ¶ 35.) Without explanation, the letter stated the Rail Trail ran "counter to DOT's priority of focusing DOT's multimodal grant programs primarily on projects that promote vehicular travel," and "no longer aligns with DOT priorities." (*Id.* ¶ 36.)

That was all. Defendants did not explain the individualized review apparently conducted, did not reference any statutory criteria, and afforded no remedy for the withdrawal. (*Id.* ¶¶ 37–38.) Based on that arbitrary, capricious, and unlawful action—which wiped out 80% of the funding necessary for the Rail Trail—Albuquerque had no choice but to file this lawsuit. (*Id.* ¶¶ 38–44.)

**LEGAL STANDARD**

Although arguing that judicial review is unavailable under the APA, Defendants seek dismissal on that basis only under Rule 12(b)(6). (Doc. 31 at 1.) "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations omitted). "Dismissal under Rule 12(b)(6) is appropriate only if the complaint lacks enough facts to state a claim to relief that is plausible on its face." *E.W. v. Health Net Life Ins. Co.*, 86 F.4th 1265, 1280 (10th Cir. 2023) (citation modified). Thus, it is Defendants' burden to show that Albuquerque has not plausibly alleged the existence of a final agency action that is subject to review under the APA. *Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11, 48 (D. D.C. 2020) ("[A]ll federal courts are in agreement that the burden is on the moving party in a Rule 12(b)(6) motion to prove that no legally cognizable claim for relief exists" (citation modified)).

In the alternative, Defendants request relief under Rule 12(b)(1) on the basis that the Tucker Act deprives this Court of jurisdiction. (Doc. 31 at 1.) In deciding a Rule 12(b)(1) motion that "facially attack[s] the complaint's allegations as to the existence of subject matter jurisdiction," *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 507 (10th Cir. 2023), the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party," *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1152 (10th Cir. 2013) (citation modified), when determining whether subject-matter jurisdiction exists, *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

## ARGUMENT

**I.**     **<u>Defendants Have Not Overcome the Presumption of Judicial Review.</u>**

Without any meaningful analysis of 49 U.S.C. § 6702, Defendants assert that Albuquerque's APA claims are unreviewable and concern conduct "committed to agency discretion by law." (Doc. 31 at 4 (citing 5 U.S.C. § 701(a)(2)).) But because 49 U.S.C. § 6702 contains mandatory obligations, goals, and criteria to consider when awarding grants under the Program, there is "law to apply" and Defendants have not met their burden to overcome the presumption in favor of judicial review.

To prevail on this argument, Defendants must overcome the "well-settled" and "strong" presumption in favor of judicial review of agency actions. *Guerero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020); *Kucana v. Holder*, 558 U.S. 233, 251 (2010). "The presumption applies with force to claims that an agency exceeded statutory authority or violated the Constitution." *Miot v. Trump*, --- F. Supp. 3d ----, 2026 WL 266413, at *9 (D. D.C. Feb. 2, 2026) (citation omitted). And the APA itself reflects a strong presumption in favor of judicial review. *Bowen v. Mich. Academy of Family Physicians,* 476 U.S. 667, 670 (1986). Overcoming that presumption requires Defendants to make a clear showing that Congress intended to restrict access to judicial review. *Id.* at 671–72; *see also Vigil v. FEMA*, 2024 WL 2404487, at *35 (D.N.M. May 23, 2024) ("[O]vercoming the APA's presumption of judicial review is a 'heavy burden.'"); *Luna Guttierez v. Noem*, --- F. Supp. 3d ----, 2025 WL 3497016, at *12 (D. D.C. Dec. 5, 2025).

Defendants invoke an exception to that presumption under 5 U.S.C. § 701(a)(2), which is read "quite narrowly" and restricted "to 'those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's

exercise of discretion.'" *Dep't of Com. v. New York*, 588 U.S. 752, 772 (2019) (citation omitted). The exception does not apply simply where discretion exists; after all, the APA "command[s] that courts set aside agency action that is an abuse of discretion." *Id.*

The exception is triggered when, but only when, the action falls within "a very narrow range of agency decisions" for which the statute offers "absolutely no guidance," *Make the Rd. N.Y. v. Wolf*, 962 F.3d 612, 632 (D.C. Cir. 2020), meaning "there is no law to apply," *McAlpine v. United States*, 112 F.3d 1429, 1433 (10th Cir. 1997) (citation omitted). "The question is whether 'the courts have no legal norms … to evaluate the challenged action, and thus no concrete limitations to impose on the agency's exercise of discretion.'" *Luna Guttierez*, 2025 WL 3497016, at *12 (citation omitted).

### A.  The Relevant Statute Places Controls on the Secretary's Discretion.

To determine whether there is law to apply, courts focus on the language and structure of the relevant statute and any salient regulations. *City of Colo. Springs v. Solis*, 589 F.3d 1121, 1129–1130 (10th Cir. 2009); *Sierra Club v. Jackson*, 648 F.3d 848, 855 (D.C. Cir. 2011). If statutes or regulations "limit[] the discretion" of the agency, the APA's presumption of review is not displaced. *Mt. Evans Co. v. Madigan*, 14 F.3d 1444, 1449 (10th Cir. 1994). Even funding decisions may be reviewable where Congress has "circumscribe[d] agency discretion to allocate resources" because an "an agency is not free simply to disregard statutory responsibilities." *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993). Indeed, when Congress appropriates money for specific purposes and sets "substantive priorities" for how that money will be spent, there is "law to apply" and 5 U.S.C. § 701(a)(2) does not preclude APA review. *Climate United Fund v. Citibank, N.A.*, 778 F. Supp. 3d 90, 112 (D. D.C. 2025) (citing *Sierra Club*, 648 F.3d at 856); *McAlpine*, 112 F.3d at 1434

(explaining that when statutes or regulations "provide a list of objective criteria that the decisionmaker is required to consider," there is "law to apply" and APA review is available).

That is the case here: the statute governing grants for the Program establishes substantive priorities to which monies must be put and criteria that must be considered when doing so. As the actual language of the statute shows, Defendants are simply wrong to assert that the statue confers "broad discretion" to "obligate funds consistent with law and agency priorities." (Doc. 31 at 5–6 (citing 49 U.S.C. § 6702(a)(3)(H), a subpart of the definition of "eligible project").)

To start, the statute appropriates a specific amount of money and requires the Secretary to put that money to certain purposes. The statute *requires* the Secretary to "establish and carry out a program, to be known as the 'Local and Regional Project Assistance Program', to provide for capital investments in surface transportation infrastructure." 49 U.S.C. § 6702(b)(1). "The goal of the program shall be to fund eligible projects that will have a significant local or regional impact and improve transportation infrastructure." *Id.* § 6702(b)(2). To that end, $1.5 billion was appropriated for fiscal years 2022 through 2026 "to carry out this section." *Id.* § 6702(j). Once "funds are made available to carry out the program, the Secretary shall publish a [NOFO] for the funds." *Id.* § 6702(d)(1).

Next, when selecting among grant applicants, additional mandatory criteria kick in. The Secretary must evaluate "Primary Selection Criteria," "Additional Selection Criteria," and "geographical and modal diversity." *Id.* § 6702(d)(3)–(4), (f)(3). The "Primary Selection Criteria" include improving safety, environmental sustainability, quality of life, economic competitiveness, mobility and community connectivity. *Id.* § 6702(d)(3). Based on these criteria, "[n]ot later than 270 days after the date on which amounts are made available … the Secretary shall announce the

selection … of eligible projects to receive the grants." *Id.* § 6702(d)(6); *see also* 2 C.F.R. §§ 200.339–342 (setting forth standards for termination of awards); 1201.1 (DOT's adoption of the regulations in 2 C.F.R. part 200).

This language "affords a 'statutory reference point' by which the court is able to review the [decision]." *Milk Train, Inc., v. Veneman*, 310 F.3d 747, 752 (D.C. Cir. 2002). Indeed, "a review of the statute, its specific deadlines, [and] how it specifically defines [eligibility] … reveals that Congress limited the [Secretary's] authority to disburse funds." *Climate United Fund*, 778 F. Supp. 3d at 113 (EPA grant funding) (citation modified). Time and again, courts have found "meaningful standards to apply" based on statutory language that is even more "permissive and indeterminate" than 49 U.S.C. § 6702. *See, e.g., Community Legal Services v. U.S. Dep't of Health & Human Services*, 137 F.4th 932, 942 (9th Cir. 2025) (citing examples); *Physicians for Soc. Resp. v. Wheeler*, 956 F.3d 634, 643 (D.C. Cir. 2020) (same).

Simply, Congress did not authorize the Secretary to spend the monies appropriated under 49 U.S.C. § 6702 "on anything [he] wishes," but "circumscribed agency discretion to allocate resources by putting restrictions" in that statute. *Madigan*, 14 F.3d at 1450 (citation modified). Albuquerque's complaint alleges that Defendants did not follow those statutory criteria and, without any explanation, withdrew the grant previously awarded to Albuquerque "precisely because it satisfied" the criteria set forth in 49 U.S.C. § 6702. (Doc. 1 ¶¶ 41, 53–55, 70–71.) Such "garden-variety APA claims [are] subject to review." *Miot*, 2026 WL 266413, at *18–19. As it turns out, just this month, a court *granted* a TRO with respect to an award under the Program, *New Jersey v. U.S. Dep't of Transp.*, 2026 WL 323341, at *4 (S.D.N.Y. Feb. 6, 2026), and "[t]he

existence of successful APA challenges in this context is good evidence" that 5 U.S.C. § 701(a)(2) does not apply. *Luna Gutierrez*, 2025 WL 3497016, at *13.

**B.      Caselaw Does Not Support Defendants' Broad Claim that Funding Allocation Is Unreviewable.**

Tacitly recognizing that the language of 49 U.S.C. § 6702 does not support their arguments in favor of non-review, Defendants resort to the broad and untenable position that a "determination of how to allocate funds" is never subject to judicial review. (Doc. 31 at 5–6.) But no case endorses such a broad proposition, and Defendants' cases are distinguishable.

Take *Lincoln v. Vigil*. (Doc. 31 at 5.) Unlike 49 U.S.C. § 6702, which appropriated funds for a specific purpose with specific restrictions, that case involved a true lump-sum appropriation intended to cover all of the Indian Health Service's activities. 508 U.S. at 185. The statute authorized, but did not require, the agency to "expend such moneys as Congress may from time to time appropriate, for the benefit, care, and assistance of the Indians, for the relief of distress and conservation of health," including on "Indian mental-health care." *Id.* at 185 (citation modified). Historically, the Service had exercised this discretion to establish a program to provide medical services to Indian children, and the APA claim challenged the Service's decision to no longer fund the program. *Id.* at 184–85. The relevant statutes in *Lincoln* did "not so much as mention" the cancelled program, or require it, so there was no standard by which to judge the cancellation. *Id.* at 193–94. But *Lincoln* itself recognized that "Congress may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statutes." *Id.* at 193.

*Lincoln*'s holding "has no application" when an agency fails to act in accordance with statutory restrictions or requirements like those set forth in 49 U.S.C. § 6702. *Community Legal Services*, 137 F.4th at 940 (distinguishing *Lincoln* on this basis); *Madigan*, 14 F.3d at 1449 (finding

*Lincoln* applicable only "when the statute does not restrict what can be done with those funds").[2] This Court should reject Defendants' invitation to break from consistent precedent and shield their actions from any APA review.

Next, Defendants rely on *Community Action of Laramie County v. Bowen*, which did not apply 5 U.S.C. § 701(a)(2) to a funding determination at all. 866 F.2d 347 (10th Cir. 1989). That case arose from a dispute between a grantee agency and the Department of Health and Human Services' policy council. *Id.* at 349. The administrative action challenged there was the decision of the administrative law judge ("ALJ") to terminate any financial assistance provided to the grantee upon a finding of noncompliance. *Id.* at 351, 353. The applicable regulation provided gave the ALJ unbridled discretion to fashion a remedy upon a finding of noncompliance. *Id.* (quoting 45 C.F.R. § 1303.36(b)). The only limitation in the statute itself was "that the agency afford 'reasonable notice and opportunity for a full and fair hearing,'" which was "exactly what [the grantee] received." *Id.* at 354. The statutory scheme at issue in *Bowen* was totally unlike 49 U.S.C. § 6702, which contains substantive priorities and mandatory criteria for any award.

Finally, Defendants rely on *dicta* from another court in this District for the notion that "how to allocate grant funding is 'a quintessential decision committed to agency discretion by law.'" (Doc. 31 at 6 (quoting *Bd. of Educ. for Silver Consol. Schs. v. McMahon*, 791 F. Supp. 3d 1272, 1290 (D. N.M. 2025)).) That order addressed a request to preliminarily enjoin the Department of

---

[2]*See also*, *e.g.*, *Washington v. Dep't of Educ.*, 161 F.4th 1136, 1140–41 (distinguishing *Lincoln*); *City of Fresno v. Turner*, 2025 WL 2721390, at *7 (N.D. Cal. Sept. 23, 2025) (same); *Housing Auth. of the City & Cnty. of S.F. v. Turner*, 2025 WL 3187761, at *16–17 (N.D. Cal. Nov. 14, 2025) (same); *Climate United Fund*, 778 F. Supp. 3d at 112 (same); *Council for Opportunity in Education v. U.S. Dep't of Educ.*, 2026 WL 120984, at *10 (D. D.C. Jan. 16, 2026) (same); *Elev8 Baltimore, Inc. v. Corp. for Nat'l & Cmty. Serv.*, 804 F. Supp. 3d 524, 559 (D. Md. 2025) (same).

Education's discontinuation of grant funding. *McMahon*, 791 F. Supp. 3d at 1277. The Court first concluded that entire action belonged in the Court of Federal Claims because the plaintiff sought an award of grant monies, making any remaining discussion *dicta*. *Id.* at 1284–85.

Even taken on its own terms, *McMahon* is distinguishable. The only criterion for continued grant funding was whether "the project is in the 'best interest of the Federal government.'" *Id.* at 1288 (quoting 34 C.F.R. § 75.253(a)(5)). Given that language, the Court stated only that "Defendants' decisions—which concerned how to allocate a grant award that is, purportedly, not in the best interest of the Government—*seems like* a quintessential decision committed to agency discretion by law." *Id.* (emphasis added).[3] That permissive language is far afield from 49 U.S.C. § 6702, which creates a specific program, establishes the program's priorities, and sets forth objective criteria that must be considered.

### C.    Albuquerque's Constitutional Claims, Unchallenged by Defendants' Motion, Are Not Subject to 5 U.S.C. § 701(a)(2).

Defendants conclude by noting that "courts have suggested that judicial review may be available for 'colorable constitutional claims.'" (Doc. 31 at 6.) Respectfully, courts have not merely "suggested" that judicial review is available for such claims; that is what courts have held. "[E]ven where action is committed to absolute agency discretion by law, courts have assumed the power to review allegations that an agency exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations[.]" *Elecs. of N. Carolina, Inc. v. Se. Power Admin.*, 774 F.2d 1262, 1267 (4th Cir. 1985) (quotation omitted); *Dart v. United States*, 848 F.2d 217, 224 (D.C.

---

[3] Curiously, Defendants omitted the italicized language from *McMahon* and mischaracterize that court's "seems like" statement as a "holding." (Doc. 31 at 6.)

Cir. 1988) (a court's equitable authority to review *ultra vires* agency actions operates independently of statutory review).

Other than conclusorily asserting that Albuquerque has engaged in "artful pleading," Defendants do not explain or address how Albuquerque's constitutional claims are not "colorable," as is their burden. *Ctr. for Biological Diversity*, 453 F. Supp. 3d at 48. Thus, even if the Court were to conclude that 5 U.S.C. § 701(a)(2) bars APA review, that conclusion would have no impact on Albuquerque's constitutional claims (Counts III–VI) because those claims "do[] not implicate APA review, which is all § 701(a)(2) covers." *Miot*, 2026 WL 266413, at *18.

II. **Defendants' Decision to Withdraw the Funding Award Constitutes a Final Agency Action.**

Defendants are also incorrect that the withdrawal and cancellation of Albuquerque's grant award is not a reviewable "final agency action." (Doc. 31 at 7–8.)

As explained, the APA represents a "strong presumption that Congress intends judicial review of administrative action." *Bowen*, 476 U.S. at 670. APA review is available so long as that action constitutes an agency's final position on the matter. 5 U.S.C. § 704. To be "final," an action must (1) "mark the consummation of the agency's decisionmaking process"; and (2) be "one by which rights or obligations have been determined, or from which legal consequences will flow." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 808 (2024) (citation modified); *Bennett v. Spear,* 520 U.S. 154, 178 (1997).

"Finality" contemplates "a pragmatic approach" considering the "particular action … within the context of the relevant regulatory scheme as a whole." *Cnty. Commissioners of Cnty. of Sierra v. United States Dep't of the Interior*, 614 F. Supp. 3d 944, 952 (D.N.M. 2022) (citation

- 13 -

modified); *see also Kobach v. U.S. Election Assistance Commn*, 772 F.3d 1183, 1189 (10th Cir. 2014) (courts will construe finality "pragmatically, rather than inflexibly").

> **A.    Defendants' Unilateral Decision to Terminate Albuquerque's Grant Marks the Consummation of Their Decision-Making Process.**

Defendants do not dispute the first prong—that the decision to withdraw the award represented the consummation of their decision. (*See* Doc. 31 at 7.) The DOT Letter constitutes a "definitive statement of [Defendants'] position" to terminate the grant, leaving no room for ambiguity. *See Ctr. For Native Ecosystems v. Cables*, 509 F.3d 1310, 1329 (10th Cir. 2007); *Pennaco Energy, Inc. v. U.S. Dept. of Interior*, 377 F.3d 1147, 1155 (10th Cir. 2004) (Interior Board of Land Appeals' ("IBLA") decision to reverse auction of oil and gas leases was a "definitive statement of its position that the environmental analyses already prepared by the [Bureau of Land Management ("BLM")] were not adequate" under the Natural Environmental Policy Act ("NEPA")); *contrast with S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1159 (10th Cir. 2013) ("[I]nterim decisions of the agency as part of the process of deciding whether to grant" application for lease was not consummation of agency's decision-making process).

With regard to grant awards, "an emerging consensus of district courts recently hearing cases about different aspects of federal funding freezes" have found such actions to be final. *E.g.*, *Washington v. U.S. Department of Transportation*, 792 F. Supp. 3d 1147, 1176 (W.D. Wash. 2025) (collecting cases); *Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*, 778 F. Supp. 3d 440, 467–68 (D.R.I. 2025); *New York v. Trump*, 769 F.Supp.3d 119, 135–37 (D.R.I. 2025).

In *Woonasquatucket*, for instance, a coalition of nonprofits who had been awarded grants under a variety of federal programs brought suit to challenge the Trump Administration's funding pause, which included funds appropriated pursuant to the Infrastructure Investment and Jobs Act

("IIJA") and the Inflation Reduction Act ("IRA"). 778 F. Supp. 3d at 452–55. After concluding that the "'sweeping halts to the ordinary payment and processing' of appropriated funds" constituted a final agency action, the court explained that the "decisions to issue the *Unleashing [American Energy]* Guidance …. [a]nd to pause all IIJA and IRA funding … mark[ed] the 'consummation' of each agency's decision-making process" because no further steps were required to determine whether the agencies would freeze the funding. *Id.* at 467.

That reasoning controls here. After undergoing a competitive award process, Defendants awarded Albuquerque $11,466,938.00 in funding for the Rail Trail. (Doc. 1 ¶¶ 14–17, 18–23 & Ex. C.) Then, after receiving "instruct[ion] … to review 'competitive award selections made after January 20, 2021, that do NOT have fully obligated grant agreements or cooperative agreements in place,'" to determine whether the awards ran counter to the administration's priorities (including the *Unleashing American Energy* executive order) (*id.* ¶¶ 28–32), Defendants suddenly changed their mind and informed Albuquerque that they had decided to "withdraw[] the selection of [Albuquerque's] project for a FY 2022 RAISE grant." (*Id.* ¶ 34 & Ex. D.) As in *Woonasquatucket*, this determination is final; there are no further administrative decisions to be made. (*Id.*, Ex. D); *Washington*, 792 F. Supp. 3d at 1177 ("In reviewing actions that various federal agencies have taken this year for the express purpose of aligning themselves with executive orders issued by the new administration, Courts have characterized decisions that have resulted in categorical funding freezes as the 'consummation of [an] agency's decisionmaking process to comply with the President's executive order….'").

## B.    Defendants' Decision to Withdraw the Funding Award Carries Significant Legal Consequences.

Turning to the second prong, Defendants' sudden decision to withdraw funding also carries direct and appreciable legal consequences. (Doc. 1 ¶ 40.) Defendants' withdrawal results in "concrete" or "practical" consequences for Albuquerque. *S. Cal. All. Of Publicly Owned Treatment Works v. U.S. Env't Prot. Agency*, 8 F.4th 831, 836 (9th Cir. 2021); *California Communities Against Toxics v. Envtl. Prot. Agency*, 934 F.3d 627, 637 (D.C. Cir. 2019); *Pennaco Energy, Inc.*, 377 F.3d at 1155–56 (finding that "[d]efinite legal consequences flowed from the IBLA's decision, namely that [the plaintiff's] development of the leased tracts is delayed until the BLM has prepared additional unspecified NEPA documentation.").

By cancelling the award, Defendants' actions eliminated Albuquerque's opportunity to enter into a grant agreement and receive over $11 million in appropriated funds that Albuquerque had been counting on for three years—leaving the future of an otherwise "shovel ready" project in legal limbo. (*See* Doc. 1 ¶¶ 26–27, 34, 38.) And it did so in direct contravention of the fixed evaluation criteria for the Program, which mandated that funding for "capital investments in surface transportation infrastructure" be awarded to projects just like the Rail Trail. (*Id.* ¶¶ 10–12.) "[I]f the budgetary reshuffling, cancelation and delay of construction projects, and scrapping of" Albuquerque's grant award "do not constitute 'practical consequences,' it is difficult to imagine what would." *Washington*, 792 F.Supp.3d at 1178.

Rather than addressing these authorities, Defendants instead focus their argument on two related, but equally unpersuasive, points.

First, Defendants argue that "DOT's withdrawal of funding did nothing to affect Albuquerque's rights or obligations, and no legal consequences flowed from it because" the parties

- 16 -

never executed a grant agreement. (Doc. 31 at 7.) But a grant awardee's "rights or obligations" do not turn solely on the existence of a grant agreement. The "abrupt, categorical, and indefinite pause of obligated federal funds" is more than enough to constitute a "direct appreciable legal consequence[]." *New York*, 769 F. Supp. 3d at 137. Even if funds have not been fully obligated, "'legal consequences' surely flow" from a funding pause that deprives a grantee of access previously awarded funds. *Woonasquatucket*, 778 F. Supp. 3d at 453–54, 467–68 (distinguishing between legal rights that flow from the elimination of previously awarded funds and cases in which funds were appropriated but not yet awarded).

Here, the consequences are particularly acute. Under the award, Albuquerque had a right to pursue grant monies without arbitrary termination by the agency. And because of Defendants' decision, the ability to access funds by virtue of the award is not only paused, but withdrawn entirely—with no recourse or other right to appeal. (Doc. 1 ¶ 34, 70(f).)

Second, Defendants cite *Amerisource v. Slater*, 142 F.3d 572 (3d Cir. 1998), for the principle that because the award letter did not entitle Albuquerque to a grant agreement, the withdrawal did not ultimately change Albuquerque's legal position with regard to the funds. (Doc. 31 at 7.) But the relevant question is whether Defendants' decision affected Albuquerque's rights flowing from the *award*, regardless of whether Albuquerque ultimately receives the funding. *Woonasquatucket*, 778 F. Supp. 3d at 467. The answer is yes. Before the withdrawal, Albuquerque had received an award to fund the Rail Trail and now that award is gone. This readily distinguishes this case from *Amerisource*, in which the FAA denied a party's reconsideration request after it had already determined that it would not rescind certain documents—leaving the requesting party in the exact same position. 142 F.3d at 580–81.

- 17 -

Accordingly, Defendants' argument that Albuquerque challenges a non-final agency action is without merit.

### III.  Jurisdiction Lies with the District Court, Not the Court of Federal Claims.

Defendants finally argue in the alternative that this case is "rooted in a contract dispute with the United States," and thus, can only be heard in the Court of Federal Claims. (Doc. 31 at 8–11.) This too fails.

The Tucker Act confers exclusive jurisdiction in the Court of Federal Claims for contract claims seeking money damages against the United States. *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005); *Res. Conservation Grp., LLC v. United States*, 597 F.3d 1238, 1242 (Fed. Cir. 2010) (recognizing the Court of Federal Claims' jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."); *Vill. W. Assocs. v. R.I. Hous. & Mortg. Fin. Corp.*, 618 F. Supp. 2d 134, 138 (D.R.I. 2009).

"[T]he fact that there are underlying contractual relationships between [a grant awardee] and the Government," does not automatically "convert a claim asserting rights based on federal regulations into one which is, at its essence, a contract claim." *Woonasquatucket*, 778 F. Supp. 3d at 464; *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988). Courts "look beyond the form of the pleadings to the substance of the claim," *Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Hous. & Urb. Dev.*, 480 F.3d 1116, 1124 (Fed. Cir. 2007), considering (1) the "source of the rights upon which the plaintiff bases its claim" and (2) "the type of relief sought (or appropriate)." *Woonasquatucket*, 778 F. Supp. 3d at 464 (citation modified).

For example, *Woonasquatucket* rejected the same Tucker Act arguments because the nonprofits' challenge did not require examination of "any contract or grant agreement created between the parties." *Id.* (noting that the claims did "not turn on terms of a contract between the parties; it turns on federal statute and regulations put in place by Congress"). Further, those nonprofits sought only equitable, not monetary, relief with a source of rights in federal law. *Id.*

The same is true here. The "essence" of Albuquerque's challenge is clearly constitutional and statutory, not contractual. Albuquerque does not allege that Defendants breached the award letter or that the letter contractually binds Defendants to distribute the funds—in fact, as Defendants acknowledge, Albuquerque would have no contractual rights until the parties execute a grant agreement. (*See* Doc. 31 at 7.) Instead, the "source" of Albuquerque's rights is clearly rooted in the eligibility standards mandated by Congress in 49 U.S.C. § 6702. (Doc. 1 ¶ 41.) And Albuquerque seeks only classic declaratory and equitable relief—it asks for a declaration that Defendants' decision to cancel the FY 2022 RAISE Grant funding award is unlawful, an order vacating that decision, and an injunction against Defendants from further implementing it in contravention of the law. (Doc. 1, Prayer for Relief ¶¶ (a)–(c).)

It matters not that Albuquerque may ultimately receive the grant monies, as Defendants argue. (Doc. 31 at 10.) In cases such as this, "[t]here is a 'distinction between an action at law for damages,' which provides monetary compensation, and 'an equitable action for specific relief,' which might still require monetary relief." *Woonasquatucket*, 778 F. Supp. 3d at 465 (citing *Bowen*, 487 U.S. at 893). Nothing in Albuquerque's request for relief carries any implicit request for damages—at best, a favorable judgment may result in the restoration of the funding award, not

the guaranteed distribution of funds.[4] And even if it did, "a judicial remedy may require one party to pay money to another" does not necessarily "characterize the relief as money damages." *Id.* So long as the claim is "primarily designed not to enable a claim for past pecuniary harm, but to preserve an ongoing relationship," courts typically find its "prime objective" to be equitable. *See Normandy Apartments, Ltd. v. U.S. Dept. of Hous. & Urban Dev.*, 554 F.3d 1290, 1297–98 (10th Cir. 2009) (finding that a claim that could enable the restoration of a contractual relationship and a subsequent claim for monetary relief did not preclude district court jurisdiction).

Evading this straightforward analysis, Defendants rely on two Supreme Court emergency docket decisions, *Dep't of Educ. v. California* and *Nat'l Inst. of Health v. Am. Pub. Health Ass'n*, for the blanket proposition that the Court of Federal Claims has exclusive jurisdiction over this case. (Doc. 31 at 8–9.) In those cases, however, the relevant orders concerned grant terminations—*i.e.*, terminations to funding that had *already been obligated*. *Dep't of Educ.*, 604 U.S. 650, 650 (2025) (staying order to "pay out past-due grant obligations and to continue paying obligations as they accrue."); *Nat'l Inst. of Health*, 145 S. Ct. 2658, 2659 (2025) (staying order that vacated the "termination of various research-related grants"). Albuquerque's request to reverse Defendants' arbitrary decision, in contrast, involves no obligated funds, is not rooted in any binding contractual obligations, and does not ask for a remedy that will directly result in the funds' distribution. The

---

[4] This fact distinguishes Albuquerque's claims from Defendants' cited authorities, which typically involved a plaintiff using an injunction as a backdoor mechanism to recover contract damages or obtain other monetary relief. (Doc. 31 at 10–11 (citing, *e.g.*, *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985); *Consol. Edison Co. of New York, Inc. v. U.S., Dept. of Energy*, 247 F.3d 1378, 1385 (Fed. Cir. 2001); *Burkins v. United States*, 112 F.3d 444, 449 (10th Cir. 1997))); *see also Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 80 (D.C. Cir. 1985) (reinstating award of a *contract*, not a grant, may amount to a request for specific performance).

sole question is whether Defendants' decision was in accord with congressional mandates, and if not, whether that failure violated the APA and the Constitution.

Further, in staying the funding orders, the Supreme Court expressly acknowledged that "a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds.'" *Dep't of Educ.*, 604 U.S. at 651 (citing *Bowen*, 487 U.S. at 910); *see also Maine v. United States Dep't of Agric.*, 778 F. Supp. 3d 200, 225 (D. Me. 2025) (finding district court had jurisdiction to review challenge to grant termination under 5 U.S.C. § 702). This conclusion is squarely in accord with its analysis in *Bowen*, which recognized that "orders are for specific relief … rather than for money damages … are within the District Court's jurisdiction under § 702's waiver of sovereign immunity." 487 U.S. at 910; *see also New York v. Nat'l Science Foundation*, 793 F. Supp. 3d 562, 610 (S.D.N.Y. 2025) (explaining that while an equitable request to reverse and reinstate grant terminations likely fell within the Tucker Act, "an action merely contending that [a policy whose implementation resulted in the termination or interruption of previously awarded grants] runs afoul of the APA, and seeking an order vacating that policy and enjoining its prospective implementation, without seeking monetary relief through the payment of previously-awarded grant funds, would not necessarily encounter this jurisdictional obstacle.")

Defendants cannot escape this Court's jurisdiction by transforming this straightforward claim for equitable relief into one for breach of contract. Accordingly, this Court should also decline to dismiss on that basis.

## CONCLUSION

For the foregoing reasons, Albuquerque respectfully requests that the Court deny Defendants' attempt to dismiss this issue or, in the alternative, permit Albuquerque to redress any deficiency through an amended pleading.

Respectfully submitted,

Dated: February 17, 2026

By: */s/ Ryan J. Regula*
LAUREN KEEFE, City Attorney
DEVON P. KING, Deputy City Attorney
One Civic Plaza NW
PO Box 2248
Albuquerque, NM 87103
Telephone: 505-768-4500
lkeefe@cabq.gov
dking@cabq.gov

Ryan J. Regula*
Ryan P. Hogan*
Charlene A. Warner*
**Snell & Wilmer, LLP**
1 E. Washington St., Ste. 2700
Phoenix, AZ 85004-2556
Telephone: 602-382-6000
rregula@swlaw.com
rhogan@swlaw.com
cwarner@swlaw.com
*Admitted Pro Hac Vice*

Attorneys for Plaintiff City of Albuquerque

- 23 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 17, 2026, I filed the foregoing electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means, a smore fully reflected on the Notice of Electronic Filing.

/s/ Taylor Ellis_____