**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| CITY OF ALBUQUERQUE, | |
| Plaintiff, | |
| v. | Case No. 1:25-CV-01072-KG-KRS |
| SEAN DUFFY, IN HIS OFFICIAL CAPACITY AS SECRETARY OF TRANSPORTATION; U.S. DEPARTMENT OF TRANSPORTATION; FEDERAL HIGHWAY ADMINISTRATION; AND SEAN MCMASTER, IN HIS OFFICIAL CAPACITY AS ADMINISTRATOR OF THE FEDERAL HIGHWAY ADMINISTRATION, | |
| Defendants. | |

## <u>REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

Plaintiff's opposition confirms why the Complaint must be dismissed.

First, Albuquerque does not refute DOT's showing that the challenged withdrawal was "committed to agency discretion by law" and therefore unreviewable. 5 U.S.C. § 701(a)(2). Albuquerque points to the statutory selection criteria, but it does not dispute that DOT properly applied the statutory selection criteria as to its project or any other projects. Instead, Albuquerque challenges DOT's decision not to move forward with its project. Nothing in the statute limits DOT's discretion to select from among projects that align with the selection criteria, or from deciding not to finalize a grant agreement with a particular entity. Those decisions are therefore not subject to judicial review.

Second, Albuquerque does not show that the withdrawal was a reviewable "final agency action." Plaintiff cannot overcome the fact and indeed admits that DOT's selection notice did not

1

obligate funding. *See* Doc. 34 at 20. Therefore, DOT's withdrawal of the selection in no way impacted Albuquerque's rights or obligations: just as before the withdrawal, Albuquerque had *no* rights or obligations.

Third, if the court finds that DOT's selection notice was a binding agreement—which it was not—then any dispute over money damages belongs exclusively in the Court of Federal Claims.

## ARGUMENT

### I.    DOT's Withdrawal Decision Was Committed to Agency Discretion by Law.

As shown by the motion and memorandum of law, Congress did not limit DOT's discretion as to whether to finalize a grant agreement with any particular entity. Thus, DOT's withdrawal decision was "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), and it is therefore not subject to judicial review. Doc. 31 at 4-7.

While Albuquerque points to the selection criteria listed in the statute, Doc. 34 at 8-9 (citing 49 U.S.C. § 6702(d)), those criteria did not limit DOT's discretion with respect to the parts of the grantmaking process relevant here. That process consists of four principal steps. *First*, DOT engages in a detailed and comprehensive review of eligible applications and assigns ratings. *See* Notice of Funding Opportunity, Doc. 1-2 at 39-59. *Second*, DOT conducts a "second-tier analysis" of all projects deemed "Highly Recommended" (or "Recommended" projects that were advanced by a Senior Review Team), and it determines which projects should be deemed "Highly Rated." *Id.* at 60-61. *Third*, the "Secretary selects projects from the Highly Rated List for award, consistent with the selection criteria and statutory requirements for geographic and modal diversity." *Id.* at 61. *Fourth*, DOT obligates funding only after negotiating

2

and signing a grant agreement. *Id.* at 62.

The statutory selection criteria relied on by Albuquerque are relevant to the first two steps, but those steps are not in dispute here: Albuquerque does not contend that DOT improperly applied the criteria with respect to its project or any other project. The statutory criteria do *not* constrain DOT's discretion with respect to the final two steps. "Due to overwhelming demand, the Department is unable to provide a[n] award to every competitive project that applies." *Id.* at 61. The Secretary must therefore choose from among Highly Rated projects chosen using the selection criteria, and the statute does not restrict the Secretary's discretion to make these choices.[1] And the statute does not limit the Secretary's discretion, at the final step of the process, to decide not to finalize a grant agreement with a particular recipient.

Thus, the final two steps of the process—the only ones at issue here—remain completely discretionary. Those steps, by their very nature, required DOT to engage in the "subjective weighing" of numerous programmatic and policy considerations. Decisions of this kind, where Congress has afforded the agency flexibility to balance competing priorities and allocate limited funds without prescribing a binding outcome or formula for distribution, are quintessentially "committed to agency discretion by law." *See Heckler v. Chaney*, 470 U.S. 821, 830 (1985); *Lincoln v. Vigil*, 508 U.S. 182, 192–94 (1993) (holding that reallocation decisions made from broad appropriations, without a statutory mandate for any particular recipient, are not subject to judicial review). Moreover, DOT's Notice of Funding Opportunity ("NOFO") and award letter here made clear that selection was merely a preliminary step and that the agency retained

---

[1] The Secretary's choices from among Highly Rated projects are, of course, "consistent with the selection criteria," *id.* at 61, because all such projects were given top ratings based on those criteria.

discretion to obligate, or not obligate, funds through execution of a grant agreement.

Nothing in the statute mandates DOT's selection of Albuquerque's project or any other project. And once a selection is made, the statute does not impose any limits on DOT's ability to choose whether or not to enter into a grant agreement. As Judge Johnson recognized in *Board of Educ. for Silver Consol. Schs. v. McMahon*, 791 F. Supp. 3d 1272, 1290–91 (D.N.M. 2025), agency allocation decisions are quintessentially discretionary and unreviewable where the statute does not narrow the agency's choice among competing uses of appropriated funds. *McMahon* explained that, absent a binding statutory command or formula, courts lack a judicially manageable standard to second-guess which eligible projects an agency funds. That principle controls here. Where Congress appropriates funds and authorizes an agency to exercise judgment in distributing them, courts do not presume that Congress intended to enable judicial review of every discretionary distribution choice. S*ee Lincoln*, 508 U.S. at 193–94. Therefore, there is no law to apply to assess the Secretary's decision that the Rail Trail Project was no longer being considered for program funding. The absence of a judicially manageable standard to govern DOT's allocation decisions is fatal to Plaintiff's APA claim.

Plaintiff's attempt to distinguish the facts of *Lincoln* is misplaced, as that case closely parallels the facts here. In *Lincoln*, Native American children who were *eligible* for a health program challenged the discontinuation of that specific program in favor of a broader nationwide system. The Court upheld the agency's discretion because Congress conferred a broad statutory mandate to provide health services to Native American people but had not specified how the agency must allocate those resources. *Id*. at 195. Notably, the statute in Lincoln "did not so much as mention," the discontinued program, and Plaintiffs could not "seriously contend" that the

4

Indian Health Service was not following its statutory mandate when it continued to allocate funds and provide services to Native American Children. *Id*. at 194 - 195. As in *Lincoln,* § 6702 does not so much as mention Albuquerque's Rail Trail Project. Once the selection factors are applied, there is no language limiting DOT's discretion not to enter into a grant agreement with a particular project. Section 6702 leaves the Secretary discretion to determine which among many eligible projects best advance the program's goals.

Plaintiff cites several decisions where courts permitted APA review of agency funding decisions. In those cases, however, there was either a statutory formula fixing the outcome or a termination of grants where funds were already obligated. Here, none of those conditions exist. The Rail Trail's selection was a preliminary step in a competitive process, funding remained contingent on the execution of a grant agreement, and the statute allows DOT to choose which eligible projects to fund. That discretion, combined with the absence of legal entitlement prior to obligation, is exactly what the APA's § 701(a)(2) exception shields from review.

For example, Plaintiff cites *Community Legal Services v. U.S. Dep't of Health & Human Services*, 137 F.4th 932 (9th Cir. 2025), to show when there are meaningful standards to apply. However, *Community Legal Services* involved a statutory and regulatory framework that created fixed duties and payment expectations for legal service providers of unaccompanied alien children. Specifically, the statute established clear, nondiscretionary obligations and a defined payment mechanism by which a legal service provider could challenge any nonperformance. *Id*. at 941. The Ninth Circuit treated that statutory scheme as supplying a judicially manageable standard to apply and found plaintiffs had a legal entitlement that permitted judicial review. *Id*. at 942. Similarly, in *Physicians for Social Responsibility v. Wheeler*, 956 F.3d 634, 643 (D.C. Cir.

2020), the court identified a meaningful standard for reviewing the EPA's directive restricting grant recipients from serving on advisory committees, noting that while the EPA had broad discretion appointing members, the statutory mandate requiring agency heads to ensure compliance with ethics rules provided clear criteria to evaluate appointment decisions. By contrast, 49 U.S.C. § 6702 establishes a competitive grant program with broad selection factors and authorizes the Secretary to choose among many eligible projects. The selection factors provide a standard guiding DOT's selection of applicants, but it cannot be applied to assess DOT's decision not to enter into a grant agreement.

Plaintiff also cites cases involving the termination or suspension of already obligated awards. *See Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.,* 778 F. Supp. 3d 440, 467–68 (D.R.I. 2025); *Washington v. U.S. Department of Transportation*, 792 F. Supp. 3d 1147, 1176 (W.D. Wash. 2025); *New Jersey v. U.S. Dep't of Transp.*, 2026 WL 323341 (S.D.N.Y. Feb. 6, 2026). In these cases, courts held that review was appropriate because recipients had a vested expectation or legal right arising from obligated funds or executed grant agreements. Here, the Rail Trail Project was never reduced to an executed grant agreement, and no funds were obligated. In fact, Plaintiff has cited no cases in which a court has determined that it can review an agency's decision to withdraw a project from grant consideration.

Plaintiff attempts to sidestep the fact that DOT's decision was "committed to agency discretion by law," by asserting constitutional violations, including violations of the Separation of Powers, Take Care Clause, and Presentment Clause. But those claims are derivative of the alleged statutory entitlement and do not present independent, colorable constitutional claims.

It is true that courts permit review of constitutional claims even where an action is

otherwise unreviewable under the APA. *See Webster v. Doe*, 486 U.S. 592, 602-04 (1988). But a plaintiff cannot take advantage of this fact by repackaging a statutory claim as a constitutional claim. *See Dalton v. Specter*, 511 U.S. 462, 472 (1994) ("Our cases do not support the proposition that every action by . . . [an] executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution. On the contrary, we have often distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority."). Here, Plaintiff's constitutional claims simply restates its statutory argument that DOT's withdrawal contravened Congress's directives in § 6702 and was arbitrary and capricious. Nothing about this narrow dispute over a single grant involves the lofty constitutional concerns put forward by Albuquerque. Therefore, the complaint does not allege facts that would constitute a colorable constitutional violation independent of the statutory dispute.

## II.    DOT's Withdrawal Was Not a Reviewable "Final Agency Action" Under *Bennett*.

As shown by the motion and memorandum of law, Albuquerque's claims are not reviewable for a second, independent reason: DOT's withdrawal did not constitute a reviewable "final agency action" Doc. 31 at 7 (citing 5 U.S.C. § 704).  An action is final for APA purposes only if it (1) "mark[s] the consummation of the agency's decision making process," and (2) is "an action by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). While DOT's withdrawal letter may have marked the culmination of its decision making, it did nothing to affect Albuquerque's rights or obligations. Indeed, Albuquerque had no such rights or obligations in the first place. Plaintiff points to case law to argue that "practical consequences"

can create finality, but the cases it cites are materially different from the facts here. The authorities Plaintiff invokes involved agency actions that produced concrete legal effects involving already-obligated funds, vested grants, or contracts. None of which is the case here.

For example, Plaintiff cites *New York v. Trump*, 769 F.Supp.3d 119, 135–37 (D.R.I. 2025), *Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.,* 778 F. Supp.3d 440, 467–68 (D.R.I. 2025), and *Amerisource v. Slater*, 142 F.3d 572 (3d Cir. 1998), to claim that withdrawal of an award or a funding pause suffices for finality. However, these cases are not remotely analogous. In *New York*, the court reviewed agency action where grant funds had already been awarded and obligated. There, agencies sought to halt distribution of funding to recipients with established, vested rights under grant agreements. Similarly, in *Woonasquatucket*, the court found finality in the "pause" of federal grants because the grants were either fully executed agreements or funds had already been obligated, creating a legal consequence to the challenged agency action.

Plaintiff's attempt to distinguish *Amerisource* is unconvincing. Albuquerque claims that the award letter conferred rights now revoked by the withdrawal letter and asserts that its ultimate receipt of funding is irrelevant. However, the award letter granted no enforceable rights to Albuquerque. Whether or not Albuquerque received the withdrawal letter, its legal position remains unchanged. It has no right to funding and no imminent work is scheduled. Accordingly, Albuquerque cannot identify any legal consequences arising from the Department's decision to cease negotiations on the grant.

In sum, Albuquerque has not shown any legal consequences that would satisfy the second prong of *Bennett*. Unlike in *New York* and *Woonasquatucket*, Albuquerque never received any

legally cognizable right that could be changed through agency action. Albuquerque never possessed an executed grant agreement; DOT never obligated funds; and no construction plans have changed. The NOFO and award letter made clear that any program monies Albuquerque would receive would be *after* the execution of a grant agreement and was categorized as a *reimbursement* after the submission of allowable, incurred expenses to DOT. Therefore, there is no delay that Albuquerque can point to which resulted from the withdrawal letter.

**III.    The Court Lacks Jurisdiction Because the Tucker Act Gives the Court of Federal Claims Exclusive Jurisdiction Over Contract-Based Claims Against The United States.**

If the Court concludes that DOT's selection letter created a legally enforceable obligation, contrary to the NOFO and the selection letter itself, then this suit would be a contract claim against the United States. The Tucker Act, 28 U.S.C. § 1491(a)(1), gives the Court of Federal Claims exclusive jurisdiction over claims against the United States founded on an express or implied contract. *See Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1083, 1093–94 (10th Cir. 2006). The Supreme Court's recent decisions recognize that district courts lack jurisdiction to order specific monetary relief tied to obligations to pay funds, and they underscore the Tucker Act jurisdictional line. *See Dep't of Educ. v. California*, 604 U.S. 650 (2025) (per curiam); *Nat'l Inst. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025) (per curiam).

Plaintiff frames its suit as a quest for equitable relief, but the thrust of the complaint is to create a judicially enforceable right where none exists and thereby secure the payment of federal monies. This type of relief squarely belongs in the Court of Federal Claims. If this Court were to recognize the selection letter as creating enforceable rights, exclusive jurisdiction would lie in the Court of Federal Claims. Accordingly, this Court should dismiss for lack of subject-matter

jurisdiction.

## CONCLUSION

For the foregoing points and authorities, Defendants respectfully request that the Court grant the Motion to Dismiss and dismiss Plaintiff's Complaint in its entirety for failure to state a claim. In the alternative, if the Court construes the selection letter to create a contractual obligation, the Court should dismiss for lack of jurisdiction under the Tucker Act.

Dated: March 20, 2026

Respectfully submitted,

Of Counsel:

GREGORY ZERZAN
General Counsel

CHARLES E. ENLOE
Assistant General Counsel
  For Litigation and Enforcement

ERIN D. HENDRIXSON
Acting Deputy Assistant General Counsel
  For Litigation and Enforcement

United States Department of Transportation

TODD BLANCHE
Deputy Attorney General

RYAN ELLISON
First Assistant United States Attorney

By: /s/ *Matthew L. Yanez*
MATTHEW L. YANEZ
Special Assistant United States Attorney
1200 New Jersey Ave SE
Washington, DC 20590
(771) 216-4991
Matthew.yanez@dot.gov

/s/ *Roberto D. Ortega*
ROBERTO D. ORTEGA
Assistant United States Attorney
201 3rd St., NW, Suite 900
Albuquerque, NM 87102
(505) 224-1519
Roberto.ortega@usdoj.gov

10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 20, 2026, I filed the foregoing electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

/s/ *Matthew L. Yanez 3/20/26*
Special Assistant United States Attorney
1200 New Jersey Ave SE
Washington, DC 20590

11