IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CITY OF ALBUQUERQUE,

Plaintiff,

v. No. 1:25-cv-01072-KG-KRS

SEAN DUFFY, in his official capacity
as Secretary of Transportation; U.S. DEPARTMENT
OF TRANSPORTATION; SEAN MCMASTER,
in his official capacity as Administrator of the
Federal Highway Administration; and
FEDERAL HIGHWAY ADMINSTRATION,

Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss, Doc. 31, Plaintiff City of Albuquerque's (the "City") Response, Doc. 34, and Defendants' Reply, Doc. 36. For the reasons below, the motion is denied.

## *I. Background*

The following facts taken from the City's complaint are accepted as true and viewed in the light most favorable to the City, as required under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In the 2021 Infrastructure Investment and Jobs Act, Congress appropriated $1,500,000,000 for the "Local and Regional Project Assistance Program," the purpose of which is "to provide for capital investments in surface transportation infrastructure." Pub. L. No. 117–58, 135 Stat. 429, 674; 49 U.S.C. § 6702(b)(1), (j). Congress created the program to "fund eligible projects that will have a significant local or regional impact and improve transportation infrastructure." § 6702(b)(2). Congress authorized the Secretary of Transportation to distribute

the funds to eligible entities between 2022 and 2026. § 6702(j). It also established selection criteria under which the Secretary must evaluate projects for grant eligibility. § 6702(d)(3)–(4).

On January 27, 2022, the United States Department of Transportation ("DOT") issued a Notice of Funding Opportunity ("NOFO") soliciting applications for eligible projects. Doc. 1 at 5; Doc. 31 at 3. DOT sought to fund projects that reduce greenhouse gas emissions and address the impacts of climate change, as well as projects that address environmental justice, racial equity, and other barriers to opportunity. Doc. 1-2 at 4–6. The NOFO stated that "[n]otice of selection is not authorization to begin performance or to incur costs for the proposed project." *Id.* at 63. It also noted that grant recipients would "not receive lump-sum cash disbursements at the time of award announcement or obligation of funds," but that DOT would reimburse grant recipients "only after a grant agreement has been executed, allowable expenses are incurred, and valid requests for reimbursement are submitted." *Id.*

In April 2022, the City applied for funding for the Albuquerque Rail Trail ("Rail Trail") project. Doc. 1 at 6. The Rail Trail is a "multi-use urban trail project" designed to connect communities and infrastructure disconnected by the railroad built in 1880, and to promote safety for pedestrians and cyclists in Albuquerque. *Id.* at 6–7. On August 11, 2022, DOT awarded the City $11,466,938.00 for the Rail Trail project ("2022 Selection Letter")—roughly 80% of the total estimated project cost.[1] Doc. 1 at 13; Doc. 1-4. The 2022 Selection Letter emphasized that it was not an authorization "to incur costs to carry out the project," and that only the "execution of the grant agreement will obligate" grant funding. *Id.* The Federal Highway Administration ("FHWA") advised the City that it would not execute a grant agreement until the Rail Trail complied with federal standards and construction was ready to begin. *Id.* Over the next three

[1]The total estimated cost for the Rail Trail project was $14,333,671.00. Doc. 1-4.

years, the City worked with the FHWA to develop a federally compliant design for the Rail Trail project. Doc. 1 at 10.

In 2025, President Donald J. Trump issued an executive order titled *Unleashing American Energy*, Exec. Order No. 14,154, 90 Fed. Reg. 8343 (Jan. 20, 2025). The order instructed agencies to "immediately pause the disbursement of funds appropriated through...the Infrastructure Investment and Jobs Act" and to "review their processes, policies, and programs for issuing grants, loans, contracts, or any other financial disbursements of such appropriated funds for consistency with the law and the policy outlined in...this order." *Id.* at § 7(a). On March 11, 2025, DOT Secretary Sean Duffy issued an internal directive to the Heads of Secretarial Offices and Operating Administrations instructing the offices "to review award selections made after January 20, 2021, that do NOT have fully obligated grant agreements or cooperative agreements in place." Doc. 1 at 11 (emphasis in original). The memo directed DOT and FHWA leadership to identify and review programs that may have included: "equity activities, Diversity, Equity, and Inclusion (DEI) activities, climate change activities, environmental justice (EJ) activities, gender-specific activities, when the primary purpose is bicycle infrastructure (i.e., recreational trails and shared-use paths, etc.), electric vehicles (EV), and EV charging infrastructure." *Id.* After the initial review, leadership recommended which projects "could continue in their current form, be revised with a reduced or modified scope, or be canceled entirely." *Id.*

On September 9, 2025, DOT sent a letter to the City withdrawing its selection of the Rail Trail project for a grant (the "2025 Withdrawal Letter"). Doc. 1 at 12; Doc. 1-5. DOT explained that the Rail Trail project "runs counter to DOT's priority of focusing...grant programs primarily on projects that promote vehicular travel." Doc. 1-5.

In response, the City filed the present action challenging the lawfulness of Defendants' decision to withdraw grant funding made available under the Infrastructure Investment and Jobs Act. Doc. 1. It argues that DOT's withdrawal of the grant award constitutes unlawful agency action in violation of 5 U.S.C. § 706(2)(A) and (C) of the Administrative Procedure Act ("APA"). *Id.* at 26. The City also claims that DOT and FHWA violated the separation-of-powers doctrine, the Take Care Clause, and the Presentment Clause, and acted *ultra vires* by withdrawing and canceling the grant without consideration of "the specific statutory requirements set by Congress." Doc. 1 at 21–25.

Defendants seek to dismiss the City's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 31. They assert that the Court lacks jurisdiction over this case because the Tucker Act vests exclusive jurisdiction over contract disputes in the Court of Federal Claims. *Id.* at 8. Alternatively, they contend that DOT's decision to withdraw the grant award is not a reviewable, final agency action. *Id.* at 1. However, if the Court concludes that DOT's decision is a final agency action, Defendants argue that it is a "discretionary agency action that is unreviewable under the APA." *Id.* at 1, 4.

## ***II. Legal Standard***

"Rule 12(b)(1) provides for challenges to the court's subject-matter jurisdiction, while Rule 12(b)(6) provides for motions to dismiss the complaint for failure to state a claim upon which relief can be granted." *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1294 (10th Cir. 2003) (internal quotation marks and citation omitted). "The primary difference between a 12(b)(6) and 12(b)(1) standard is that, under a 12(b)(1) standard, the Court may consider evidence outside the pleadings, while under a 12(b)(6) standard, the Court is limited to the pleadings." *Swepi v. Mora County, N.M.*, 81 F. Supp. 3d 1075, 1147 (D.N.M. 2015). "[O]n a

Rule 12(b)(1) motion, the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)." *Pearl River Union Free Sch. Dist. v. Duncan*, 56 F. Supp. 3d 339, 351 (S.D.N.Y. 2014) (alteration, internal quotation marks, and citation omitted).

Under both standards, the reviewing court "must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor." *Hernandez v. Grisham*, 499 F. Supp. 3d 1013, 1044–45 (D.N.M. 2020). A district court "should ordinarily decide the 12(b)(1) motion first." *Ne. Erectors Ass'n of BTEA v. Sec'y of Labor, Occupational Safety & Health Admin.*, 62 F.3d 37, 39 (1st Cir. 1995); *see In re Franklin Sav. Corp.*, 385 F.3d 1279, 1286 (10th Cir. 2004) ("Jurisdictional issues must be addressed first and, if they are resolved against jurisdiction, the case is at an end.").

## ***III. Analysis***

For the reasons below, the Court concludes that: (A) it has jurisdiction over the City's claims; (B) DOT's 2025 Withdrawal Letter is a final, reviewable agency action; and (C) the APA waives Defendants' sovereign immunity with respect to the City's non-APA claims.

### ***A. The Court has jurisdiction over the City's claims under the APA.***

As a preliminary matter, the Court has jurisdiction over the City's claims. Defendants argue that the City's claims should be dismissed under Rule 12(b)(1) because the Tucker Act precludes judicial review of claims for monetary damages arising from contracts with the United States. Doc. 31 at 10. The Court disagrees.

"The United States and its agencies are generally immune from suit in federal court absent a clear and unequivocal waiver of sovereign immunity." *Crowley Gov't Servs., Inc. v.*

*Gen. Servs. Admin.*, 38 F.4th 1099, 1105 (D.C. Cir. 2022). The APA contains a general waiver of sovereign immunity in all civil actions brought against the United States, under the APA or otherwise, where the plaintiff is not seeking monetary damages. *United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 549 (10th Cir. 2001). However, "this waiver does not apply where any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1080 (10th Cir. 2006) (internal quotation marks and citation omitted).

The Tucker Act vests exclusive jurisdiction in the United States Court of Federal Claims over claims against the United States for monetary damages greater than $10,000, "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1); *Normandy Apartments, Ltd. v. U.S. Dep't of Hous. & Urban Dev.*, 554 F.3d 1290, 1295 (10th Cir. 2009). Even where a complaint does not explicitly seek monetary relief, the Tucker Act "impliedly forbids" federal courts from ordering declaratory or injunctive relief where "the thrust of the suit is one seeking money from the United States." *Id.* at 1296 (internal quotation marks and citation omitted). To determine whether the Tucker Act impliedly forbids the City's claims, courts evaluate whether a particular action is "at its essence a contract action" or whether a claim is "constitutional, statutory, or regulatory in nature." *Id.* at 1299. In doing so, the Court examines "the source of the rights upon which the plaintiff bases its claims," and "the type of relief sought." *Id.*

First, the source of the City's rights is rooted in the federal Constitution and statute, not in contract. Doc. 31 at 9. The parties concede that the 2022 Selection Letter is not a contractually binding agreement. Doc. 31 at 9; Doc. 34 at 19. To the extent the City's claims implicate the

2022 Selection Letter, such references do not convert its statutory and constitutional claims into a contract claim. *See Normandy Apartments*, 554 F.3d at 1299 (stating that "the fact that resolution of a claim requires some reference to contract does not magically transform the action into one on the contract and deprive the court of jurisdiction it might otherwise have" (omissions, internal quotation marks, and citation omitted)).

*Normandy Apartments* compels the Court's conclusion in this case. 554 F.3d at 1293. There, the Tenth Circuit held that a district court had jurisdiction to consider plaintiff's claim that the United States Department of Housing and Urban Development violated its regulations when terminating subsidy payments to plaintiff. *Id.* The Court emphasized that where a party claims that the Government acted contrary to federal regulations, statutes, or the Constitution, jurisdiction properly lies with the federal district court. *Id.* at 1300. Similarly here, the City is not suing on a contract. Rather, the City claims that DOT and FHWA violated the Infrastructure Investment and Jobs Act and the U.S. Constitution by terminating the grant award without considering the selection criteria mandated by statute. Doc. 34 at 8. These allegations show that the source of the City's claims is constitutional and statutory in nature, not contractual.

Second, the "prime objective or essential purpose" of the City's suit is to obtain equitable relief, not monetary relief. *Normandy Apartments*, 554 F.3d at 1296. "[T]he Court of Federal Claims' exclusive jurisdiction is triggered whenever the prime objective or essential purpose of a suit is to recover money in excess of $10,000 from the federal government." *Id.* (internal quotation marks and citation omitted). As discussed above, the City has no contractual right to monetary damages as the 2022 Selection Letter is not a binding agreement. Instead, the City's claims are "primarily designed not to enable a claim for past pecuniary harm, but to preserve an ongoing relationship." *Id.* at 1297. Here, the City asks the Court to declare DOT's 2025

Withdrawal Letter unlawful, vacate the 2025 Withdrawal Letter, and enjoin Defendants from further implementing any directives contrary to Congress's express mandates as set forth in the Infrastructure Investment and Jobs Act. Doc. 1 at 26. Such relief has "significant prospective effect or considerable value apart from" monetary value: restoring the City's status as an eligible grantee and preventing Defendants from repeating the same unlawful process in the future. *Normandy Apartments*, 554 F.3d at 1296. The fact that the City may be entitled to the grant award as a result of the equitable relief sought in this case does not transmute the City's action to one for monetary relief. *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988) ("The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'"). Thus, the APA's waiver of sovereign immunity applies, and the Tucker Act does not preclude this Court from exercising jurisdiction over the City's claims.

### *B. Defendants' decision to withdraw the funding award is a reviewable, final agency action.*

Next, the Court rejects Defendants' argument that the City fails to state a claim upon which relief can be granted under Rule 12(b)(6) because the 2025 Withdrawal Letter is not a final, reviewable agency action. Section 702 of the APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof." Judicial review under the APA is available for "final agency action for which there is no other adequate remedy in a court." *Kansas ex rel. Schmidt v. Zinke*, 861 F.3d 1024, 1028 (10th Cir. 2017) (quoting 5 U.S.C. § 701(a)(1)). An agency action is final if it (1) "mark[s] the consummation of the agency's decisionmaking process," and (2) "[is] one by which rights or obligations have been

determined, or from which legal consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes*, 578 U.S. 590, 597 (2016) (internal quotation marks and citation omitted).

Here, Defendants concede that the 2025 Withdrawal Letter "marked the culmination of [DOT's] decision making." Doc. 36 at 7. The letter represents the conclusion of DOT's review of the Rail Trail grant, and nothing in Defendants' briefing suggests that DOT intends to revisit its withdrawal decision. *See U.S. Army Corps of Eng'rs*, 578 U.S. at 598. The Court is therefore persuaded that the 2025 Withdrawal Letter is a "definitive statement" of the agency's position. *Ctr. for Native Ecosys. v. Cables*, 509 F.3d 1310, 1329 (10th Cir. 2007).

As for the second prong, "it is disingenuous for Defendants to assert that there are no practical consequences to their actions." *Washington v. U.S. Dep't of Transp.*, 792 F. Supp. 3d 1147, 1178 (W.D. Wash. 2025). Defendants narrowly focus on whether the City had a legally enforceable right to the funds, which the City concedes it does not, but ignore the practical consequences of DOT's decision to withdraw the grant award. The City spent three years working towards full compliance with federal standards so that it could begin construction on the Rail Trail. Doc. 1 at 10. FHWA advised the City that it would not execute a grant agreement without such compliance. *Id.* DOT's withdrawal of the grant award—which constituted nearly 80% of the Rail Trail project's budget—placed the City in a budgetary limbo. That the City had no "vested rights" under a grant agreement is inconsequential. *See* Doc. 36 at 8. Defendants' approval of the Rail Trail project created a legal interest in the availability of the funds pending compliance with the standards imposed by the federal Defendants. *See Prutehi Litekyan: Save Ritidian v. U.S. Dep't of the Air Force*, 128 F.4th 1089, 1109 (9th Cir. 2025) ("[A] federal agency's assessment, plan, or decision qualifies as final agency action even if the ultimate impact of that action rests on some other occurrence—for instance, a future site-specific application, a

decision by another administrative agency, or conduct by a regulated party."). By withdrawing the grant award, Defendants terminated the City's legal interest in the availability of the funds and, as a result, cast the approved Rail Trail project into budgetary uncertainty.

Lastly, Defendants' argument that the decision to withdraw the grant award is "a classic exercise of discretion committed to an agency by Congress" is unavailing. Doc. 31 at 5. Indeed, courts traditionally do not intrude on an agency's decision to allocate funds from a lump-sum appropriation. *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993). However, "an agency is not free simply to disregard statutory responsibilities: Congress may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statutes." *Id.* Here, the City plausibly alleges that Defendants failed to follow the mandates of the Infrastructure Investment and Jobs Act. The statute not only requires Defendants to consider certain selection criteria when awarding grants but also mandates that DOT evaluate grant applications "through a methodology that is discernible and transparent to the public." § 6702(d)(3)–(5). Accordingly, DOT's decision to withdraw the grant award is properly considered final agency action reviewable under the APA.

**C. *The City's constitutional claims are reviewable.***

Finally, the APA's sovereign immunity waiver applies to non-APA causes of action so long as plaintiff seeks equitable relief. *New Mexico v. McAleenan*, 450 F. Supp. 3d 1130, 1195 (D.N.M. 2020); *see also Z Street, Inc. v. Koskinen*, 44 F. Supp. 3d 48, 65 (D.D.C. 2014) (noting that "the APA is not, in itself, a jurisdiction-conferring statute" and "the statutory prerequisites to bringing an APA-claim—such as final agency action—have no jurisdictional impact" on non-APA causes of action). As explained above, the City seeks equitable relief in the form of vacatur

and an injunction. Doc. 1 at 26. Therefore, it may rely on the APA's sovereign immunity waiver as a basis for jurisdiction over its non-APA claims.

### *IV. Conclusion*

For the reasons above, Defendants' Motion to Dismiss, Doc. 31, is denied.

IT IS SO ORDERED.

/s/Kenneth J. Gonzales
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.